IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CYNTHIA YEOMANS , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:09cv488-WHA |
| | ) | |
| FORSTER AND HOWELL, INC., d/b/a | ) | (wo) |
| GROCERY OUTLET AND COUNTRY | ) | |
| MARKET; JACK HOWELL; and NANCY | ) | |
| JENKINS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment (Doc. #84), filed by the

Defendants on July 2, 2010, and three Motions to Strike evidence submitted by the Plaintiff,

filed by the Defendants on August 3, 2010 (Doc. ## 101, 102, 103).

The Plaintiff filed a Complaint in this case on May 26, 2009, bringing claims of sex

discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act

of 1964, as amended, against Forster and Howell, Inc. d/b/a Grocery Outlet and Country Market

("F & H") (Count One) and abuse of process against F & H, Jack Howell, and Nancy Jenkins

(collectively "the Defendants") (Count Two).   The Defendants answered the Complaint and

F&H brought counterclaims against the Plaintiff for conversion (Count One), fraud (Count

Two), deceit (Count Three), breach of fiduciary duty (Count Four), unjust enrichment (Count

Five), and a claim denominated as doctrine of the faithless servant (Count Six).  The Defendants

subsequently filed a Motion for Summary Judgment on all claims asserted by the Plaintiff, and

on the counterclaims against the Plaintiff.

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of

the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See*

*Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded

to the motion for summary judgment, the court must grant summary judgment if there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The summary judgment rule is to be applied in employment discrimination cases as in

any other case. *Chapman v. A1 Transport*, 229 F.3d 1012, 1026 (11th Cir. 2000) (*en banc*).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most

favorable to the non-movant:

Defendant F & H operates several grocery stores in Alabama, Georgia, and Florida.  Kent

Forster ("Forster") and Defendant Jack Howell ("Howell") own F & H.   The Plaintiff, Cynthia

Yeomans ("Yeomans" or "Plaintiff")) began working for the corporation in December of

2006, as a staff accountant. She had previously worked on the account while employed with an

outside accounting firm, but then went to work directly for F & H.   While employed with F &

H, she was responsible for the payroll system.

Defendant Nancy Jenkins ("Jenkins") is an Administrative Assistant who has worked

for the corporation for many years.   Teresa Spears ("Spears") worked as a secretary at F & H

during the time Yeomans worked there.

In April of 2008, Yeomans turned in a resignation letter stating that she would be

resigning effective May 30, 2008.  Yeomans subsequently prepared a second letter on May 20,

2008, stating that she could not work under the stress caused by the sexually hostile work environment, and terminated her employment.  In that letter, she referred to a previous complaint of sexual harassment by her, and promised to take action by Jack Howell and Kent Forster.

Yeomans filed an EEOC charge on June 25, 2008, which was signed under penalty of perjury, and also sworn to and notarized.  The content of that EEOC charge is the subject of a Motion to Strike filed by the Defendants.  The basis of the charge was sex discrimination and sexual harassment.  F & H appeared to have received the charge on July 3, 2008.

Yeomans's initial EEOC charge identifies approximately nine comments made by Spears which Yeomans contends were harassing, some of which were recurring comments; approximately four comments and other conduct by Jenkins; and the reaction of Howell and Forster to comments. Other evidence provided by Yeomans from two co-workers identifies additional comments and conduct.  This evidence is the subject of Motions to Strike, and will be discussed in greater detail below.

After Yeomans resigned, Howell had a meeting with a manager of F & H, Paul Marchman, in which Howell told Marchman that he thought Yeomans had stolen money, and "he had hoped to use this as a negotiating tool with the EEOC thing, but that it had now gone too far."  Paul Marchman Affidavit at page 3.

On July 16, 2008, Howell swore out a warrant for Yeomans's arrest for embezzlement. Howell had first become aware of problems regarding Yeomans's payroll processing at the end of January, or the first of February, 2008.

In August of 2008, Yeomans submitted an amended charge of discrimination to the

4

EEOC, stating that she had been charged with and arrested for a meritless claim filed by Forster and Howell.

After a preliminary hearing on the theft charges, the state court found probable cause that Yeomans had committed a crime.  The grand jury issued a true bill indictment for two counts of first degree theft of property on January 29, 2009.  Yeomans's case has not yet been tried as of the date of this Memorandum Opinion and Order.

## IV.  DISCUSSION

### Plaintiff's Claims

### A.  Title VII Claims against F & H

### 1.  Disparate Treatment on the Basis of Sex

The Defendants contend that Yeomans has failed to present any evidence to establish a prima facie case of discrimination on the basis of her sex.   Although her Complaint lists "sexual discrimination, sexual harassment, and retaliation," Complaint at page 10, in response to the Motion for Summary Judgment, Yeomans states that she is claiming a hostile work environment, retaliatory constructive discharge, retaliation, and abuse of process.  Doc. #93 at page 41. Therefore, to the extent that a claim for disparate treatment on the basis of sex was alleged in the Complaint, summary judgment is due to be GRANTED as to that claim.

### 2. Hostile Work Environment

As a preliminary matter, the Defendants have moved to strike much of the evidence that Yeomans relies on in opposition to the Motion for Summary Judgment.  Before the court can address whether the evidence adduced is sufficient to create a question of fact for trial, therefore, the court must first address the motions to strike that evidence.

a.  Motions to Strike Evidence of Hostile Environment

1.  Yeomans's EEOC Charges and Corresponding Statements in Brief

One of the primary sources of evidence relied upon by Yeomans is her EEOC charge, and amended EEOC charge, which the Defendants have moved to strike in whole, or in part.

While it does not appear that the Eleventh Circuit has addressed whether the substance of an EEOC charge can create a question of fact for purposes of a summary judgment motion, other courts have done so.  *See, e.g.*, *Alvarado v. Shipley Donut Flour & Supply Co., Inc.*, 526 F. Supp. 2d 746 (S.D. Tex. 2007); *Owsiak v. Kimco Corp.*, No. 95-C-4116, 1997 WL 722990 (N.D. Ill. Nov. 13, 1997).  Courts have considered  EEOC charges if they are "sworn to." *Alvarado*, 526 F. Supp. 2d at 764.  Courts have also considered EEOC charges which are in the form of a declaration. *Lumoa v. Potter*, 351 F. Supp. 2d 426, 432 (M.D. N.C. 2004).  The reasoning of these courts is that as long as the EEOC charge meets the requirements of Fed. Rule 56(e), the EEOC charge can be considered as evidence opposing the motion for summary judgment.  *See Owsiak*, 1997 WL 722990 at *3; *Lumoa*, 351 F. Supp. 2d at 432 (considering an EEOC investigative affidavit on summary judgment to the extent it met Rule 56(e) because it met the requirements of 28 U.S.C. § 1746).  The court is persuaded by this reasoning, and concludes that an EEOC charge, which otherwise meets the requirements of Rule 56(e), is like an affidavit or declaration which, while not generally admissible at trial, can be considered by the court in ruling on a motion for summary judgment.  *See McMillian v. Johnson*, 88 F.3d at 1573, 1584 (11th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)), *aff'd*, 520 U.S. 781 (1997).

In this case, the Defendants state that the Plaintiff would not verify during her deposition

that she signed the EEOC charges, but the charges state that she swore to the matters within, bear her signature, and are notarized. EEOC Charges, page 1.[1] Furthermore, Yeomans also signed and dated the charging documents under the statement, "I declare under penalty of perjury that the foregoing is true and correct." *Id.* This satisfies the requirements of 28 U.S.C. § 1746. The court concludes, therefore, that the charges sufficiently meet the requirements Rule 56(e), and the mere fact that the EEOC charge, and amended charge, are not in a traditional affidavit or declaration form is not sufficient reason to strike it from consideration at the summary judgment stage. *See Lumoa*, 351 F. Supp. 2d at 432.

The Defendants have moved to strike the Plaintiff's EEOC charges on other grounds as well. They contend that, even if the charges are sworn and properly authenticated, they are untested assertions which cannot make up for the Plaintiff's failure to provide testimony in her deposition, and they contain statements not based on the Plaintiff's personal knowledge, contain legal statements, and hearsay. They argue, therefore, that the EEOC charges amount to a "sham affidavit," citing cases from this jurisdiction and others. To constitute a sham affidavit, however, the charging documents would have to have been executed after Yeomans's invocation of the Fifth Amendment during her deposition. *See Van T. Junkins, & Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). In the cases relied upon by the Defendants, courts have not allowed affidavits which were offered after invocation of the Fifth Amendment, reasoning that a

---

[1] The initial EEOC Charge is Plaintiff's Exhibit 6 and the Amended EEOC Charge is Plaintiff's Exhibit 3. The two charges are nearly identical, with the same page numbering. The only substantive difference is that the Amended charge contains the statement that Yeomans was arrested on a "meritless" claim filed by Howell and Forster. Therefore, the court will simply cite to "EEOC Charges," and the relevant page, unless referring specifically to the Amended EEOC charge.

party cannot use the Fifth Amendment as a shield in a deposition and then discard it for limited purposes to defeat summary judgment.  *See First Bank Bus. Capital, Inc. v. Agriprocessors, Inc.*, No. 08cv1035-LRR, 2010 WL 300630 *7-*8 (N.D. Iowa Jan. 19, 2010).  That is not the situation in this case, because Yeomans filed her first EEOC charge before she was arrested for the alleged crime, and filed the Amended Charge on August 20, 2008, before the Defendants deposed her on May 5, 2010.  The court concludes, therefore, that the EEOC charges are not due to be stricken in their entirety on the basis of any "sham affidavit" analysis.

As to the Defendants' concern that the statements in the EEOC charge are untested, upon a review of case law addressing affidavits made before the invocation of the Fifth Amendment privilege, it appears that the Eleventh Circuit does not categorically exclude such evidence.   For instance, in forfeiture cases, the Eleventh Circuit has recognized an exception to the rule that a trier of fact may make an adverse inference from invocation of the Fifth Amendment in a civil action, where a claimaint in a civil case is also a defendant in a criminal case, and is forced to choose between waiving the privilege and losing the case on summary judgment.  *United States v. Two Parcels of Real Property Located in Russell County*, 92 F.3d 1123, 1129 (11th Cir. 1996).  That exception was applied by another judge of this court, who declined to strike an affidavit offered after a claimant of seized currency had invoked his Fifth Amendment rights in a deposition.  *United States v. Fifty Five Thousand Five Hundred Twenty Six ($55,526) Dollars in United States Currency*, No. 2:06cv997, 2007 WL 4365467 (M.D. Ala. Dec. 11, 2007) (Fuller, C.J.).  The court pointed out that the government argued that granting a motion to strike the claimant's affidavit would require the court to rule against the claimant on the government's summary judgment motion. *Id.* at *2.  The court reasoned that in that situation, if the court did

8

not consider the affidavit provided by the plaintiff because the plaintiff had invoked his Fifth Amendment rights, invocation of the privilege would result in an adverse judgment in the forfeiture case, not merely stripping the claimant of his best defense, so that the court would consider the affidavit. *Id.* This reasoning is based on a constitutional limitation which is not limited to forfeiture cases, but has also been applied by the Eleventh Circuit outside the forfeiture context. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1304 (11th Cir. 2009) (stating in a Trademark Act and Anti-Cybersquatting Consumer Protection Act case that "[t]he automatic entry of an adverse judgment solely as a result of the assertion of the Fifth Amendment has been held to be an undue burden, impermissible under the Constitution.").

The Defendants in this case have argued that they are entitled to summary judgment, due to Yeomans's invocation of her Fifth Amendment rights, because the facts presented by the Plaintiff are "largely, in fact, unsupported by any admissible evidence." Reply Brief at page 1 . The court finds that because, as the Defendants argue, striking Yeomans's EEOC charges would result in the automatic entry of an adverse judgment solely as a result of the assertion of the Fifth Amendment, there would an undue burden on her Fifth Amendment rights. Therefore, the court will consider the EEOC charges, rather than strike them in their entirety. The court will, however, address objections to particular aspects of the statements in the EEOC charges where relevant.[2]

---

[2] The following statements by Yeomans, identified by the Defendants, have not been considered by the court, so that the Motion to Strike is due to be DENIED as moot as to these statements: that Jenkins believed it was Yeomans's fault that the owners came to her with questions; that Jenkins had no intention of doing anything about the hostile environment; that Jenkins, Forster and Howell participated in and fostered the sexually hostile working

The Defendants have objected to several of the statements in Yeomans's EEOC charges as being hearsay, to which Yeomans responds that the statements are not offered for the truth of the matter asserted, but to establish the working environment at F & H.

Yeomans's EEOC charges contain comments made directly to her, and comments she became aware of during her employment.  Yeomans states in the EEOC charges that she heard the following statements directed to her:  Jenkins told Yeomans she did not like a flirt; when Yeomans voiced a complaint of sexual harassment to Jenkins, Jenkins said "if anybody asks, we were only discussing financial statements," Jenkins told Yeomans that Forster and Howell did not want to discuss things with Yeomans directly, and became angry when Forster and Howell went directly to Jenkins, and that when Yeomans told Howell and Forster Spears's comment that a new female employee "could make more money on her back" than working at F & H, Howell and Forster laughed.  EEOC Charges at page 2.

Yeomans also identified a statement relayed to her by a co-employee[3] in which Spears said, "Well, it's already started; She's in his office probably under the desk working on a raise," referring to Yeomans.   EEOC Charges at page 2.  Also, it can be inferred from the fact that she reported the comment, that Yeomans was aware during her employment that Spears said that a new female employee "could make more money on her back" than working at F & H.

A "[p]laintiff may support a claim of hostile work environment by the use of harassing

_____

environment; that since Yeomans's employment ended she has been retaliated against; and that she believes she has been discriminated and retaliated against in various ways.

[3] Lethia Thompson states in her deposition that she told Yeomans about the comment. Letititia Thompson Dep. at page 156:17-9.  This evidence is subject to a motion to strike, which is discussed below.

conduct she learned of through hearsay, so long as she was aware of the harassing incidents at the relevant time at which she alleges she experienced the hostile environment." *Head v. Pitts Enterprises, Inc.,* No. 1:09cv187, 2010 WL 2773376 (M.D. Ala. July 14, 2010) (Albritton, J.); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp.2d 1301, 1326 (N.D. Ga. 2001) (citing *Carter v. Chrysler Corp.*, 173 F.3d 693, 701 (8th Cir.1999)).

There are other statements which Yeomans does not specifically state she was told during her employment.  Instead, Yeomans sets forth specific statements made by Spears, and in a later paragraph of the EEOC charges states that she complained about Spears's statements to Jenkins on several occasions.  EEOC Charges at page 2.  Drawing all reasonable inferences in favor of the non-movant, and reading the EEOC charges as a whole, the court concludes that there is at least a question as to whether Yeomans was aware of these comments during her employment.  These statements include the following:  Spears told co-workers Yeomans was sleeping with the bosses; Spears told others that "unlike Cynthia, I don't have to sleep with my boss to keep my job;" Spears stated that applicants for a receptionist position would get the job if they "arched their back," and other similar comments; Spears made comments when a female wore a short skirt or low cut blouse; and Spears remarked when men got raises or benefits that they received the benefits "just because he's got a pecker in his pants."  *Id.*  These statements will be considered by the court in evaluating the totality of the circumstances of the hostile environment claim.

The court will not, however, consider Yeomans's statement that Howell and Forster said they wanted a "good looking girl" as a receptionist.  There is nothing in the EEOC charges from which a reasonable jury could conclude that Yeomans was aware of this comment during her

employment.  Therefore, the Motion to Strike is due to be GRANTED as to that comment.

Yeomans also stated that Jenkins openly discussed an affair she had with Howell.
Amended EEOC Charges at page 2.   As will be discussed below, Lethia Thompson also states
that she told Yeomans about comments Jenkins made about her affair with Howell.  Lethia
Thompson Declaration at page 2.

In summary, the court has carefully considered the objections to Yeomans's reliance on
her EEOC charges to oppose summary judgment in this case.  This court has treated the charges
as an affidavit or declaration which, while not generally admissible at trial, can be considered
by the court in ruling on a motion for summary judgment.  *See McMillian*, 88 F.3d at 1584.
The court will consider the admissible statements from those EEOC charges, outlined above,
in ruling on the Motion for Summary Judgment.

### 2.  Paul Marchman's Affidavit

The Defendants have also moved to strike Paul Marchman's Affidavit, or portions of that
Affidavit.  The Defendants' primary objection is to what they have characterized as hearsay
testimony within Marchman's affidavit.  The Defendants also contend that various statements are
made without personal knowledge.

Yeomans argues that Marchman's affidavit contains statements which are evidence of the
working environment in which Yeomans found herself, regardless of whether Yeomans was
aware of the statements at the time.  Yeomans cites to cases from outside of this district to
support the admissibility of such evidence.  The law in the Eleventh Circuit, however, is that a
court may consider statements not directed at the plaintiff, *Edwards v. Wallace Comm. College*,
49 F.3d 1517 (11th Cir. 1995), and even hearsay statements, if the plaintiff was aware of the

statements at the time she was employed.  *See Head v. Pitts Enterprises, Inc.,* No. 1:09cv187, 2010 WL 2773376 (M.D. Ala. July 14, 2010) (Albritton, J.); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp.2d 1301, 1326 (N.D. Ga. 2001) (citing *Carter v. Chrysler Corp.*, 173 F.3d 693, 701 (8th Cir.1999)).  Marchman does not state that he relayed the statements in his affidavit to Yeomans during her employment, and Yeomans does not state in her affidavit that she learned of statements from Marchman.  The court will, therefore, not consider statements of allegedly harassing conduct by Marchman, and the Motion to Strike is due to be GRANTED as to statements of comments made known to Marchman, but for which there is no evidence that Yeomans was made aware of the statements during her employment.

Other statements by Marchman to which the Defendants have objected as being beyond his personal knowledge, or as being conclusions of law, have not been considered by the court, so that the Motion to Strike is due to be denied as moot as to those statements.

To be clear, the Motion to Strike does not concern, and the court will consider, in the context of the retaliation claim, Marchman's statement that Howell told him he thought Yeomans and stolen money and "he had hoped to use this as a negotiating tool with the EEOC thing, but that it had now gone too far."  Paul Marchman Affidavit at page 3.

### 3.  Lethia Thompson's Deposition Testimony and Declaration

The Defendants have also moved to strike portions of Lethia Thompson's Declaration as being inconsistent with her deposition testimony and, therefore, due to be stricken under the sham affidavit rule.  *See Van T. Junkins, & Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

The Defendants state that paragraph two of Thompson's declaration states that in

conversations between Jenkins and a male employee, the man was telling jokes that were sexually offensive, whereas in her deposition she stated that he was saying "F this and F that." Thompon 99: 23-100:20.  The court cannot conclude that the characterization of the testimony is so contradictory as to warrant being stricken.

Paragraph four of Thompson's declaration concerns a conversation with Jenkins which the Defendants say is stated as if it occurred during employment with the Defendants, whereas the deposition makes it clear that the conversation occurred when Thompson and Jenkins knew each other at a different employer.  The court will not strike the evidence on that basis, but finds that the objection instead goes to weight of the evidence.

Paragraph 5 of Thompson's declaration concerns a statement about seeing an anatomically correct male blow-up doll given to Spears as a gift, whereas, as the Defendants point out, the deposition does not state that Thompson saw the doll, but merely saw a box with a picture depicting the doll.  The court cannot conclude that the declaration warrants striking.

The Defendants also object to various statements as being hearsay, to which Yeomans responds that the statements are not offered for the truth of the matter asserted, but merely that they were made.  Unlike Marchman, Thompson specifically states in her affidavit that she told Yeomans about various statements.  Those statements are, therefore, due to be considered, even if they were not directed at Yeomans.  *See Edwards v. Wallace Comm. College*, 49 F.3d 1517 (11th Cir. 1995).  The court has not, however, considered statements by Thompson regarding Yeomans's statements in reaction to hearing about the aforementioned comments, so the Motion to Strike is due to be denied as moot as to those aspects of Thompson's declaration.

 Finally, the Defendants object to deposition answers, stating that they were in response

to leading questions.   Specifically, the Defendants point to Thompson's statement in her deposition that she told Yeomans that Spears said while on the phone that Yeomans was in Howell's office "on her knees probably working on a raise."  Thompson Dep. at page 156: 13-9. The question preceding that answer was "[a]t the beginning of Cynthia's employment, did you overhear a conversation with Teressa was [sic] talking to Nancy about what Cynthia was doing with Mr. Howell?"  *Id.* at page 155: 19-22.   Yeomans states that the answers were detailed, so that the questions did not create a false memory, and the Defendants had the opportunity to question Thompson further.  The court agrees.  Furthermore, as stated above, the court has considered Yeomans's statement in her EEOC charges that a co-employee told her this statement.  The court will, therefore, not strike this aspect of Thompson's deposition.

    In summary, the court will consider Thompson's statements that she told Yeomans that Spears was laughing at filthy jokes; that she relayed to Yeomans Spears's story that before Yeomans worked at F & H, Spears had to get medicine so that David Eubank, at a previous employer, could have sexual relations with Yeomans; Thompson told Yeomans about Jenkins describing a sexual relationship with Howell; Thompson told Yeomans that Spears received a gift at work, and displayed a box with the gift inside, which had a picture of a male blow-up doll on the box.

### b.  Hostile Work Environment Claim

    To establish a claim of hostile work environment harassment, a plaintiff must show that (1) she belongs to a protected group, (2) she has been subject to unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working

environment, and (5) a basis for holding the employer liable.  *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir. 1999).

The Defendants move for summary judgment on elements four and five; namely, whether the conduct is sufficiently severe and pervasive to create a hostile environment, and whether there is a basis for holding F & H liable.

In evaluating whether there is a discriminatorily abusive working environment, the court is to consider the frequency of the discriminatory conduct, its severity, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interferes with an employee's work performance.  *Harris v. Forklift Systems, Inc*., 50 U.S. 17, 23 (1993).

The comments to be considered as discussed in connection with the motions to strike are as follows:

Spears said, referring to Yeomans, "Well, it's already started; She's in his office probably under the desk working on a raise;" Jenkins told Yeomans she did not like a flirt; when Yeomans voiced a complaint of sexual harassment, Jenkins said "if anybody asks, we were only discussing financial statements;" Jenkins told Yeomans that Forster and Howell did not want to discuss things with Yeomans directly and became angry when Forster and Howell went directly to Jenkins; Spears told co-workers Yeomans was sleeping with the bosses; Spears told others that "unlike Cynthia, I don't have to sleep with my boss to keep my job," Spears stated a new employee "could make more money on her back," and that applicants for a receptionist position would get the job if they "arched their back," and other similar comments; Spears made comments when a female wore a short skirt or low cut blouse; Spears remarked when men got

raises or benefits that they received the benefits "just because he's got a pecker in his pants;" Jenkins openly discussed an affair she had with Howell; Spears was laughing at filthy jokes; Spears told a story about buying medicine so that David Eubank, with Yeomans's former employer, could have sexual relations with Yeomans; Spears received a lewd gift at work, and displayed a box with the gift inside, which had a picture of a male blow-up doll on the box; and Howell and Forster laughed when Yeomans told them that Spears said a new employee could "earn more on her back" than working at F & H.

The Defendants argue that the evidence of comments in this case at most establish that F & H was a workplace that was vulgar at times, but that comments involved men and women and there is no evidence that F & H disadvantaged one gender over another.   The Defendants also point to other evidence that Jenkins and Spears had personality conflicts with employees, that there was a lot of office gossip, and that Jenkins and Spears may have felt that Yeomans wanted to be the boss.

The Defendants rely on *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798 (11th Cir. 2010) (*en banc*).  In *Reeves*, the court determined that there was sufficient evidence to create a jury question as to a hostile environment claim. *Id.* at 813. The evidence in the case consisted of daily gender-based comments directed at women, not necessarily the plaintiff, and other vulgar language.  The Eleventh Circuit reiterated that Title VII is not a civility code, but ultimately determined that although some of the evidence was of general, indiscriminate vulgarity, there was also "ample evidence of gender-specific, derogatory comments made about women on account of their sex."  *Reeves*, 594 F.3d at 802.

It is clear from *Reeves* that even if there is evidence which does not bolster a hostile

environment claim, the court is to evaluate separately the evidence which does support a claim of sex-based harassment.  *Reeves* also makes clear that merely because statements are directed at men as well as women does not necessarily mean that there is no hostile environment, if the comments themselves are demeaning to women.  *See id.* at 813.

Conducting such analysis in this case, the mere fact that there is evidence of personality conflicts and vulgar, but not sex-based comments, does not diminish the fact that there were multiple, repeated sex-based comments directed to Yeomans, or relayed to Yeomans during her employment.  The comments about men, like those in *Reeves*, could be viewed by a reasonable jury as bolstering a demeaning view of women in the context of other evidence.  There is evidence in this case that Spears accused women of engaging in sexual behaviors to make advancements.  A reasonable jury could view the comments about men as implying that men could advance at F & H merely because they are men, while women were expected to engage in sexual behavior to advance or receive employment benefits.

Of course, a fact which distinguishes this case from *Reeves* is that the comments being made in this case were largely made by women, and the plaintiff is a woman.[4]  The Supreme Court has explained, however, that "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace."  *Oncale v. Sundowner Offshore Services*,

---

[4] A comment made to Marchman by a male about Yeomans has not been considered as there is a lack of foundation that Yeomans was aware of the comment.

Inc., 523 U.S. 75, 82 (1998).  A reasonable jury in the instant case could conclude that the comments in the instant case, particularly those concerning accusations of sexual activity as a means of advancement at F & H, reflected a hostility toward the presence of women in the workplace.

Considering the evidence admissible for purposes of summary judgment in a light most favorable to the non-movant, the court concludes that there are questions of fact which preclude summary judgment on the issue of whether the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.  The court will revisit the sufficiency of the evidence, of course, if asked to do so at the close of the Plaintiff's evidence at trial.

The Defendants also contend that the Plaintiff cannot establish a basis for holding F & H liable.  Hostile work environment claims fall into one of two categories: harassment that culminates in a tangible employment action for which employers are strictly liable, and harassment that takes place in the absence of a tangible employment action, as to which employers may assert an affirmative defense.  *Pennsylvania State Police v. Suders*, 542 U.S. 129, 143 (2004).

Yeomans contends that she was constructively discharged, so strict liability should apply to her hostile environment claim.  Such a position has, however, been foreclosed by *Suders*, in which the Court determined that the *Faragher/Ellerth* affirmative defense to a claim of sexual harassment can be available in a constructive discharge case.  *Suders*, 542 U.S. at 152.

An employer "is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority

over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).  When no tangible employment action has been taken against the employee, a defending employer may raise as an affirmative defense to liability or damages:  "(a) that the employer exercised reasonable care to prevent and correct promptly any. . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* at 807.  Where the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action.  *See Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000).  Thus, a victim of coworker harassment must show either actual knowledge on the part of the employer or conduct sufficiently severe and pervasive as to constitute constructive knowledge to the employer.  *See id.*

The Defendants contend in support of the *Faragher/Ellerth* affirmative defense that F & H had an anti-harassment policy which was posted on the bulletin board, and that Yeomans has no evidence that she availed herself of this policy before her last day of work.

The Plaintiff has presented evidence from Paul Marchman, a manager at F & H, who stated in his affidavit that the company has no policy regarding harassment and discrimination and they have no training on either subject.  Marchman Aff. at page 3.  The second letter of resignation which Yeomans submitted states within it that she had made previous complaints of harassment which went unaddressed.  Doc. #86-4.  Yeomans has stated that she was told by Jenkins that Spears was her supervisor.  EEOC Charges at page 3.  Whether Spears was her supervisor or merely a co-worker is an issue that will have to be resolved by the trier of fact.

20

Whether Spears was Yeomans's co-worker or supervisor, Yeomans has presented evidence that other management officials at F & H engaged in the comments and conduct she complained of, and/or were aware of comments by co-workers within the workplace. *See id.* at page 2; Doc. #86-4.   The court concludes, therefore, that there are questions of fact which establish a basis for liability and which preclude summary judgment on the *Faragher/Ellerth* affirmative defense.

### c.  Retaliation

To establish a prima facie case of retaliation, a plaintiff must show that she engaged in statutorily protected activity, that she suffered an adverse employment action, and there is a causal connection between the two events. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

The Defendants concede for purpose of the motion for summary judgment that Yeomans can make out a prima facie case of retaliation because she filed an EEOC charge, and F & H turned over evidence of alleged theft to the police.   The Defendants state that the legitimate, non-discriminatory reason for taking evidence of theft to the Dothan police department was that the Defendants investigated the matter, and determined that Yeomans had taken the funds.

The Plaintiff's response to the motion for summary judgment primarily consists of her arguments regarding the prima facie case, but  she also states that "her retaliation claim is due to survive summary judgment."  Doc. #93 at page 59.   She points to Marchman's testimony that Howell said that Yeomans had stolen money and "he had hoped to use this as a negotiating tool with the EEOC thing, but that it had now gone too far," among other evidence, as proof of causation. Marchman Affidavit at page 3.

The Defendants have correctly pointed out that the Plaintiff's brief does not specifically

identify any argument as being a refutation of their articulated, non-discriminatory reasons. Although the Plaintiff's brief may be inartfully written, however, on page 59, she refers to "another issue," after discussing the causation element of her prima facie case. She presents evidence which she says establishes her innocence, which is responsive to the allegation of theft. She also states that according to the Defendants' evidence, the company was aware that Yeomans was allegedly receiving two checks before Jenkins made a statement to the unemployment commission agency on June 18, 2009, but in that statement, Jenkins made no mention of the alleged theft. *See* Plaintiff's Exhibit 2. Yeomans further has stated under penalty of perjury that the charges filed by F & H were "meritless." EEOC Charges at page 3. These arguments and evidence can be read as supporting a contention that the articulated reason is pretextual.

The Defendants have argued that Yeomans cannot establish pretext by merely arguing that the investigation of alleged theft could have been conducted a different way. The Plaintiff's evidence, however, creates a question as to both whether she actually committed the theft, and, viewed in a light most favorable to the non-movant, whether the employer actually believed her to have committed theft. While perhaps clumsily argued, the court finds that the Plaintiff has sufficiently met her burden in opposing summary judgment, and has created a question of fact as to the credibility of the articulated reason for the theft allegations to be turned over to the police, so that summary judgment is due to be denied as to the retaliation claim.

### d.  Constructive Discharge

To establish a claim of constructive discharge, a plaintiff must prove that working conditions are so intolerable that a reasonable person in her position would have been compelled

to resign. *Griffin v. GTE Florida, Inc.*, 182 F.3d 1279, 1283 (11th Cir. 1999).

The Defendants contend that if the court were to consider the allegations of harassment, Yeomans submitted a notice of resignation on April 26, 2008, stating that she would resign in May, and Yeomans has not presented evidence of any significant changes that would support her being unable to stay employed for a month. The Defendants state that the Plaintiff cannot establish a claim of constructive discharge because the only incidents which occurred after her first resignation letter were that around May 20, 2008, Spears yelled at Yeomans about a note, and Yeomans was asked to train Greg Howell to do the payroll.

Yeomans points to her second letter of resignation in which she stated that she had intended to work until May 30, but felt she no longer could do so because of Jack Howell and Kent Forster's "acknowledgement of the bullying and sexual harassment by Mrs. Spears, your promise to take action, and your failure to do take any action . . ." Defendants' Exhibit D. She has argued that after she submitted her initial resignation letter, she realized that she could no longer continue to work at F & H due to Howell and Forster's failure to take action. The court concludes that the determination of whether the environment was so intolerable that a reasonable person in Yeomans's position would have been compelled to resign is one that must be made by a jury, and summary judgment is due to be denied as to this claim.

### B.  Abuse of Process Claims Against F& H, Howell, and Jenkins

The Plaintiff brings a state law claim of abuse of process in Count II of the Complaint. The elements of the tort of abuse of process are (1) the existence of an ulterior purpose, and (2) a wrongful use of process, and (3) malice. *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998). The Plaintiff has argued that the stated purpose of bringing charges against her was to

use the charges as a negotiation tool to have her drop her EEOC charges, but that once the police took over, the process had gone too far. The Plaintiff argues that the Defendants could have withdrawn the charges, but chose not to do so.

In evaluating this claim, the court finds the Hagood decision, relied on by the Defendants, to be instructive. In *Hagood*, there was evidence that Movie Gallery falsified a membership application in order to begin a prosecution of the plaintiff, and thereby collect a debt owed for overdue movie rentals. *Hagood*, at 946-47. The Alabama Supreme Court explained, however, that acting wrongfully in swearing out the warrant does not establish an abuse of process claim. *Id.* at 950. A defendant is "not liable for abuse of process simply because it prosecuted [the plaintiff] with an ulterior purpose." *Id.* The court distinguished malicious prosecution cases, which concern the wrongful issuance of process, and abuse of process claims, which concern the use of process after it has been issued. *Id.* The court stated that the absence of a wrongful act after the arrest warrant was issued meant that there was no abuse of process claim. *Id.* The plaintiff in *Hagood* argued that the defendant continued pursuit of criminal charges, but the court rejected that argument, stating that there is no liability where "the defendant has done nothing other than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* at 951 (citation omitted).

Yeomans argues that the second element of an abuse of process claim is met in this case because F & H "brought the criminal charges against Yeomans 'outside the boundaries of legitimate procedure after the charge had been filed.'" Doc. #92, page 62 (quoting *Willis v. Parker*, 814 So. 2d 857 (Ala. 2001)). As set out above, however, Alabama law is clear that to constitute abuse of process, action must be taken after the charges are brought. Yeomans also

states that the second abuse of process element is met because F & H could have withdrawn the complaint because Howell and Forster knew the information was false.   This court concludes, however, that the facts, viewed in a light most favorable to Yeomans, are so close to that in *Hagood*, where the defendant also manufactured evidence so as to initiate the prosecution, that the *Hagood* holding also applies in this case.   Summary judgment is, therefore, due to be GRANTED as to the abuse of process claim.

Counterclaims

The Defendants have moved for summary judgment on the counterclaims brought by F & H against Yeomans.   All of the counterclaims rest on the fact, alleged by F & H, that Yeomans took money from the company.   Yeomans states in her amended EEOC charge that the charges are "meritless."   Amended EEOC Charge at page 3.   The court has considered the EEOC charges as an affidavit or declaration, which presents evidence that may be reducible to admissible form at trial and may be considered in ruling on a Motion for Summary Judgment.   At this point in the proceedings, therefore, the court concludes that a question of fact has been raised as to the fundamental issue of theft, so that summary judgment cannot be granted to F & H on the counterclaims.

## V. <u>CONCLUSION</u>

For the reasons discussed, it is hereby ORDERED as follows:

1.  The Motion to Strike Plaintiff's EEOC Charge and Amended EEOC Charge (Doc. #101) is DENIED in part, GRANTED in part, and DENIED in part as moot, as set forth above.

2.  The Motion to Strike Paul Marchman's Affidavit (Doc. #102) is GRANTED in part

and DENIED in part as moot, as discussed above.

3. The Motion to Strike Portions of Lethia Thompson's Testimony (Doc. #103) is DENIED in part and DENIED as moot in part, as discussed above.

4. The Motion for Summary Judgment (Doc. #84) is GRANTED and judgment is entered in favor of Forster and Howell, Inc. d/b/a Grocery Outlet and Country Market; Jack Howell; and Nancy Jenkins and against Cynthia Yeomans on her disparate treatment on the basis of sex and state law abuse of process claims.

5. The Motion for Summary Judgment (Doc. #84) is DENIED as to the hostile environment, constructive discharge, and retaliation claims against Forster and Howell, Inc. d/b/a Grocery Outlet and Country Market, and the counterclaims by Forster and Howell, Inc. d/b/a Grocery Outlet and Country Market against Yeomans.

6. Judgment having been entered in favor of Jack Howell and Nancy Jenkins on the only claim asserted against them in the Complaint, Jack Howell and Nancy Jenkins are DISMISSED as parties from this case.

The case will proceed on Cynthia Yeomans's hostile environment, constructive discharge, and retaliation claims against Forster and Howell, Inc., and on counterclaims brought by Forster and Howell, Inc. against Cynthia Yeomans.


Done this 10th day of September, 2010.

    /s/ W. Harold Albritton
    W.  HAROLD ALBRITTON
    SENIOR UNITED STATES DISTRICT JUDGE